# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| JANE DOE (S.J.C.), AN INDIVIDUAL,<br><br>Plaintiff,<br><br>v.<br><br>ESA P PORTFOLIO LLC, ESA P PORTFOLIO OPERATING LESSEE LLC, ESA P PORTFOLIO MD TRUST, ESH STRATEGIES BRANDING LLC, ESH HOSPITALITY HOLDINGS LLC, ESH HOSPITALITY INC., EXTENDED STAY HOTELS LLC, HVM LLC, HVM MEMBER 1 CORP., HVM MANAGER 2 LLC, AND HVM MEMBER 2 CORP,<br><br>Defendants. | CIVIL ACTION NO: |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Jane Doe (S.J.C.) files this Complaint against Defendants ESA P

Portfolio LLC, ESA P Portfolio Operating Lessee Inc., ESA P Portfolio MD Trust,

ESH Strategies Branding LLC, ESH Hospitality Holdings LLC, ESH Hospitality

LLC, Extended Stay Hotels LLC, HVM LLC, HVM Member 1 Corp, HVM

Manager 2 LLC, and HVM Member 2 Corp and respectfully shows the Court as follows:

## SUMMARY

1.    Jane Doe (S.J.C.) files this civil lawsuit seeking compensation for the harm she suffered because of the sex trafficking she endured at an Extended Stay America hotel owned, operated, maintained, and controlled by Defendants and their agents and employees.

2.    Sex trafficking is the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of causing the person to engage in a commercial sex act either (1) before the person turns 18 years old; or (2) through force, fraud, or coercion.[1] Traffickers or 'pimps' use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

3.    Sex trafficking has become a public health crisis that has reached epidemic proportions in the United States. It is now widely recognized, including by Congress and many state legislatures, that combating sex trafficking requires more than just criminal penalties for pimps and sex buyers.

---

[1] 18 U.S.C. §1591; 22 U.S.C. § 7102.

4.      Since 2003, federal law, through the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. §1581, et seq, has provided victims of sex trafficking a civil remedy against perpetrators of criminal sex trafficking.

5.      In 2008, Congress recognized the need to extend liability beyond sex buyers and sellers and intentionally expanded the scope of the TVPRA to reach those who—while not criminally liable under the TVPRA—financially benefit from participation in a venture that they know or *should know* engages in criminal sex trafficking.

6.      As a separate and additional remedy for those exploited as children, in 18 U.S.C. § 2255, Congress authorized any person who, while a minor, was a victim of a violation of 18 U.S.C. § 1591, to sue in any appropriate district court to recover damages.

7.      As discussed herein, Defendants derived financial benefit from facilitating sex trafficking by providing venues where traffickers could exploit victims, including victims like Jane Doe (S.J.C.) with minimal risk of detection or interruption. Defendants continued supporting traffickers, including Jane Doe (S.J.C.)'s trafficker, despite evident and apparent signs of widespread and ongoing sex trafficking in these hotels. Defendants were, therefore, knowingly receiving a benefit from participation in a venture that Defendants knew or should have known was engaged in sex trafficking.

3

## PARTIES

8.     Jane Doe (S.J.C.) is a resident of Georgia.

9.     Jane Doe (S.J.C.) is a victim of sex trafficking under 18 U.S.C. §1591(a) because she was harbored, transported, or provided for the purpose of causing her, through force, fraud, or coercion, to commit a commercial sex act.

10.    The trafficking of Jane Doe (S.J.C.) occurred in or affected interstate commerce.

11.    ESA P Portfolio LLC (f/k/a BRE/ESA P Portfolio LLC) is a Delaware company with its principal place of business in Charlotte, North Carolina. It can be served by service on its registered agent, National Registered Agents, Inc., at 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, at all relevant times, ESA P Portfolio LLC owned the Extended Stay America property located at 1050 Hammond Drive, Atlanta, Georgia 30328 ("Subject Extended Stay America").

12.    ESA P Portfolio Operating Lessee LLC (f/k/a ESA P Portfolio Operating Lessee Inc. and BRE/ESA P Portfolio Operating Lessee Inc.) is a Delaware company with its principal place of business in Charlotte, North Carolina. It can be served by service on its registered agent, National Registered Agents, Inc., at 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, ESA P Portfolio Operating Lessee Inc. was converted to ESA P Portfolio Operating

Lessee LLC in late 2013. All references to ESA P Portfolio Operating Lessee LLC include references to its predecessor entity. Upon information and belief, at all relevant times, ESA P Portfolio Operating Lessee LLC leased the Subject Extended Stay America.

13.     ESA P Portfolio MD Trust (f/k/a BRE/ESA P Portfolio MD Trust) is a Delaware company with its principal place of business in Charlotte, North Carolina. ESA P Portfolio MD Trust can be served by service on its agent for service, Wilmington Trust Company, Rodney Square North 1100 N. Market Street, Wilmington, Delaware 19890. Upon information and belief, at all relevant times, ESA P Portfolio MD Trust was part owner of ESA P Portfolio Operating Lessee LLC.

14.     ESH Strategies Branding LLC is a Delaware company with its principal place of business in Charlotte, North Carolina. ESH Strategies Branding LLC can be served by service on its agent for service, National Registered Agents, Inc., 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, at all relevant times, ESH Strategies Branding LLC controlled all branding for the Subject Extended Stay America.

15.     ESH Hospitality Holdings LLC is a Delaware company with its principal place of business in Charlotte, North Carolina. ESH Hospitality Holdings LLC can be served by service on its agent for service, National Registered Agents,

Inc., 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, at all relevant times, ESH Hospitality Holdings LLC had an ownership interest in and control of the Subject Extended Stay America.

16.     ESH Hospitality Inc. (f/k/a ESH Hospitality LLC) is a Delaware corporation with its principal place of business in Charlotte, North Carolina. ESH Hospitality, Inc. can be served by service on its agent for service, Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Upon information and belief, ESH Hospitality LLC was converted to ESH Hospitality Inc. in November 2013. All references to ESH Hospitality, Inc. include references to its predecessor entity. Upon information and belief, at all relevant times, ESH Hospitality Inc. had an ownership interest in and control of the Subject Extended Stay America.

17.     Extended Stay Hotels LLC is a Delaware company with its principal place of business in Charlotte, North Carolina. Extended Stay Hotels LLC can be served by service on its agent for service, National Registered Agents, Inc., 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, at all relevant times, Extended Stay LLC had an ownership interest in and control of the Subject Extended Stay America.

18.     HVM LLC (f/k/a Homestead Village Management LLC) is a Delaware company with its principal place of business in Charlotte, North Carolina. It can be

served by service on its registered agent, Maxton C McDowell at 216 W North Street, Albemarle, North Carolina 28001. Upon information and belief, at all relevant times, HVM LLC managed the Subject Extended Stay America.

19.    HVM Member 1 Corp. is a Delaware corporation with its principal place of business in Charlotte, North Carolina. It can be served by service on its agent for service, National Registered Agents, Inc., 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, at all relevant times, HVM Member 1 Corp. managed the Subject Extended Stay America.

20.    HVM Manager 2 LLC is a Delaware company doing with its principal place of business in Charlotte, North Carolina. It can be served by service on its agent for service, National Registered Agents, Inc., 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, at all relevant times, HVM Manager 2 LLC managed the Subject Extended Stay America.

21.    HVM Member 2 Corp. is a Delaware company doing with its principal place of business in Charlotte, North Carolina. It can be served by service on its agent for service, National Registered Agents, Inc., 1209 Orange Street, Wilmington, Delaware 19801. Upon information and belief, at all relevant times, HVM Member 2 Corp. managed the Subject Extended Stay America.

22.    ESA P Portfolio LLC, ESA P Portfolio Operating Lessee LLC, ESA P Portfolio MD Trust, ESH Strategies Branding LLC, ESH Hospitality Holdings LLC,

7

ESH Hospitality Inc., Extended Stay Hotels LLC, HVM LLC, HVM Member 1 Corp., HVM Manager 2 LLC, and HVM Member 2 Corp. are referred to collectively as "ESA."

## JURISDICTION AND VENUE

23.    This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the TVPRA.

24.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

**I.    Jane Doe (S.J.C.) was a victim of unlawful sex trafficking at hotels owned, operated, managed, and controlled by Defendants.**

25.    Jane Doe (S.J.C.) was trafficked through force and coercion by her trafficker to engage in numerous commercial sex acts.  Jane Doe (S.J.C.) was trafficked continuously from June 1, 2014 through October 31, 2015, including specifically between September 1, 2015 and October 31, 2015 at the ESA hotel located at 1050 Hammond Drive, Atlanta, Georgia 30328.

26.    Jane Doe (S.J.C.)'s trafficking repeatedly occurred in rooms of this ESA location and was facilitated by ESA Defendants and Franchisee Defendants.

27.    Between June 1, 2014 and December 2014, Jane Doe (S.J.C.) was trafficked an incalculable number of times at the ESA location named above.

28.    The Subject Extended Stay America was owned and operated by ESA who employed all hotel staff.

## II.    The Hotel Industry's Role in Sex Trafficking and Defendants' Knowledge of the Problem

29.    While the widely known and pervasive relationship between sex trafficking and the hotel industry necessarily shapes what each Defendant knew or should have known regarding the trafficking at their hotel properties, including the trafficking of Jane Doe (S.J.C.)

30.    Today, sex slavery is pervasive in the United States, and hotels are the primary place where it happens.[2] This is no accident. For years, sex traffickers have been able to reap enormous profits with "little risk when attempting to operate within hotels."[3] In 2014, 92 percent of calls to the Human Trafficking Hotline involved reports of sex trafficking taking place at hotels.[4] Hotels have been found to account for over 90 percent of the commercial exploitation of children.[5]

31.    Because of this link between hotels and sex trafficking, government agencies and non-profits have devoted significant efforts to educating the hotel

---

[2] "This is not only a dominant issue, it's an epidemic issue." See Jaclyn Galucci, Human Trafficking is an Epidemic in the U.S. It's Also Big Business, Fortune, April 2019, at https://fortune.com/2019/04/14/human-sex-trafficking-usslavery/ citing Cindy McCain, who chairs the McCain Institute's Human Trafficking Advisory Council. "It's also something that is hiding in plain sight. It's everywhere—it's absolutely everywhere." Id.

[3] See Human Trafficking in the Hotel Industry, Polaris Project, February 10, 2016, at https://polarisproject.org/blog/2016/02/human-trafficking-in-the-hotel-industry/.

[4] Michele Sarkisian, Adopting the Code: Human Trafficking and the Hospitality Industry, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015), available at: https://humantraffickingsearch.org/wp-content/uploads/2019/05/Adoptingthecode.report.cornell.pdf

[5] Erika R. George & Scarlet R. Smith, In Good Company: How Corporate Social Responsibility Can Protect Rights and Aid Efforts to End Child Sex Trafficking in Modern Slavery, 46 N.Y.U. J. INT'L L. & POL. 55, 92 (2013).

industry, including Defendants, on best practices for identifying and responding to sex trafficking. Multiple agencies and organizations who actively combat sex trafficking, including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the Texas Attorney General, Love 146, and EPCAT, among others, have established recommended policies and procedures for recognizing the signs of sex trafficking.[6]

32.    Some of the recommended policies and procedures intended to reduce or eliminate sex trafficking, of which Defendants are aware or should be aware of, include learning to identify warning signs and indicators of sex trafficking, including but not limited to:

- Individuals showing signs of fear, anxiety, tension, submission, and/or nervousness;

- Individuals showing signs of physical abuse, restraint, and/or confinement;

- Individuals exhibiting evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

- Individuals showing signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

---

[6] *See, e.g.*, Department of Homeland Security, *Blue Campaign Toolkit*, available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, *Child Sex Trafficking Overview*, available at: https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, *red Flags for Hotel and Motel Employees*, https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, Human Trafficking Red Flags, available at: https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf .

- Individuals lacking freedom of movement or are constantly monitored;

- Individuals avoiding eye contact and interaction with others;

- Individuals having no control over or possession of money or ID;

- Individuals dressing inappropriately for their age or have lower quality clothing compared to others in their party;

- Individuals having few or no personal items—such as no luggage or other bags;

- Individuals appearing to be with a significantly older "boyfriend" or in the company of older males;

- A group of girls appearing to be traveling with an older female or male;

- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

- Drug abuse or frequent use of "party drugs" such as GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Cocaine, and Marijuana;

- Possession of bulk sexual paraphernalia such as condoms or lubricant;

- Possession or use of multiple cell phones; and

- Possession or use of large amounts of cash or pre-paid cards.[7]

33.    The signs of sex trafficking in a hotel environment follow well-established patterns and can easily be detected by appropriately trained staff. Tool kits specific to the hotel industry have been developed, which help hotel staff in

---

[7] *Id.*

every position identify and respond to signs of sex trafficking.[8]  From check-in to check-out, there are indicators that traffickers and their victims routinely exhibit during their stay at a hotel.

34.    The relationship between a pimp and a prostitute is inherently coercive, and the United States Department of Justice and other agencies and organizations have recognized that most individuals involved in prostitution are subject to force, fraud, or coercion. It is also well understood that "prostitution," "sex trafficking," and "child sex trafficking" involve a single common denominator, the exchange of sex for money.

35.    The definition of sex trafficking in the TVPRA under 18 U.S.C. §1591(a)(1) incorporates the definition of commercial sex act. Defendants understood the practical and legal association between commercial sex and sex trafficking in a hotel environment. Thus, Defendants knew or should have known that signs of commercial sex (prostitution) activity in their hotels were in fact signs of sex trafficking.[9]

36.    All Defendants were aware or should have been aware of these signs of sex trafficking when operating, controlling, and managing their hotel properties,

---

[8] Department of Homeland Security, *Blue Campaign Toolkit*, https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.
    [9] *See, e.g.*, *A National Overview of Prostitution and Sex Trafficking Demand Reduction Efforts, Final Report*, https://www.ojp.gov/pdffiles1/nij/grants/238796.pdf; *Prostitution and Trafficking in Women: An Intimate Relationship*, https://www.ojp.gov/ncjrs/virtual-library/abstracts/prostitution-and-trafficking-women-intimate-relationship.

when enacting and enforcing policies and procedures applicable to those hotels and when training, educating, and supervising the staff of that hotel.

37.    The most effective weapon against sexual exploitation and human trafficking is education and training.[10] As ECPAT concluded:

> The hospitality industry is in a unique position to identify and report human trafficking due to its perceived anonymity. Traffickers believe they can go unnoticed while exploiting victims across the globe in hotels— ranging from budget properties to luxury resorts. From check-in to check-out, there are a number of indicators victims and exploiters exhibit during the time they are on a hotel property.[11]

38.    This same conclusion is echoed by others who seek to eliminate or minimize sex trafficking in the hospitality industry, including the American Hotel Lodging Association: "Hotel employees who have undergone training are more aware of trafficking when it happens – and are more willing to report it – than those who have not been trained.[12] In reference to companies like the Defendants, ECPAT observed: "If they do nothing to raise awareness or to prevent child trafficking, they risk becoming an indirect and unintentional conduit for the abuse that takes place."

39.    Given the prevalence of human trafficking in hotels and the abundance of information about how franchisors, owners, and hotel employees can identify and respond to this trafficking, it has become apparent that the decision of a hotel chain

---

[10] Polaris, *Recognizing Human Trafficking*, https://polarisproject.org/recognizing-human-trafficking/ (last visited April 13, 2023).

[11] ECPAT USA, *Training for Hotel Associates*, https://www.ecpatusa.org/hotel-training (last visited April 13, 2023). *See also* Caroline L. et al., *Sex Trafficking in the Tourism Industry*, J. Tourism Hospit. (2015), https://www.longdom.org/open-access/sex-trafficking-in-the-tourism-industry-2167-0269-1000166.pdf.

[12] AHLA, *Free Online Training*, https://www.ahla.com/issues/human-trafficking (last visited April 13, 2023).

to continue generating revenue from traffickers *without* taking reasonable steps to identify and prevent trafficking in its hotels is a decision to financially benefit by supporting and facilitating unlawful sex trafficking.

40.     Each of the Defendants had a responsibility to adopt, implement, and enforce policies to avoid facilitating sex trafficking and to train hotel staff to identify and respond to "red flags" of sex trafficking.

41.     Unfortunately for Jane Doe (S.J.C.), Defendants have failed, at all levels, to take appropriate action in response to their knowledge of widespread and ongoing human trafficking in their hotels. Instead, they have continued to financially benefit by providing venues for the sexual exploitation of victims like Jane Doe (S.J.C.).

III.    **Sex Trafficking Has Long Been Prevalent at Extended Stay America Branded Properties, and the Defendants Have Known About It.**

42.     Defendants' actual knowledge is *not* limited to a general awareness of the problem of sex trafficking in the hotel industry. Each of the Defendants has known, since well before Jane Doe (S.J.C.)'s trafficking, that sex trafficking was ongoing and widespread at its branded properties.

A. **The use of Extended Stay America properties for sex trafficking is prevalent.**

43.     The use of Extended Stay America properties for sex trafficking is well known to ESA. Information that has become public through news stories and online

reviews establishes the entrenched and pervasive nature of ESA's role in providing a venue where sex trafficking has continued unabated for years.

44.    Examples of news stories and online reviews that demonstrate the severity and pervasiveness of prostitution, sex trafficking, and other associated criminal activity at Extended Stay America properties, include:

- In 2011, an arrest was made at a Columbus area Extended Stay America property as part of an online prostitution sting.[13]

- In 2011, a man was arrested in Louisiana after holding a teenage girl at an Extended Stay America for three days and forcing her into commercial sex work.[14]

- A Maryland man was convicted on human trafficking charges after being arrested in August 2012 for operating out of an Extended Stay America property in Washington, DC.[15]

- A 2012 review of an Extended Stay America in Akron, Ohio stated: "This hotel is in need of TOTAL remodeling and TOTAL MGT. replacement...I experienced no hot water, unclean office, hallways, rooms, and to top it all off..during my stay I witnessed a Police bust for Drugs and Prostitution..needless to say, I would NEVER recommend this hotel nor would I EVER stay here again...go to Stay Place down the street...nicer..cleaner...quieter...SAFER...."[16]

- In 2012, a woman was arrested for maintaining a room in a North Carolina Extended Stay America property as a place for prostitution.[17]

- In 2013, a man was charged with operating a brothel from a room at an Extended Stay America property in California.[18]

---

[13] https://www.ledger-enquirer.com/news/local/article29169064.html
[14] https://www.wafb.com/story/13941248/police-say-missing-teen-was-forced-into-prostitution/
[15] https://www.baltimoresun.com/maryland/howard/columbia/ph-ho-cf-sex-trafficking-0801-20130730-story.html
[16] https://www.tripadvisor.com/ShowUserReviews-g50236-d101417-r147725990-Extended_Stay_America_Akron_Copley_West-Copley_Ohio.html
[17] https://www.wral.com/story/woman-charged-after-two-children-found-in-room-used-for-prostituion/11036300/
[18] https://newsantaana.com/man-charged-with-operating-a-brothel-in-irvine/

- In 2013, a man was indicted on human trafficking charges after trafficking a teenage girl at locations including a Tennessee Extended Stay America property.[19]

- In 2013, two were charged with prostituting a teenage girl after putting her in a room at an Extended Stay America property in Missouri for a two-week period where she engaged in commercial sex.[20]

- In 2013, two were arrested on human trafficking charges following an investigation at an Extended Stay America property in Florida.[21]

- A 2014 review of an Extended Stay of America property in Texas noted "The hotel caters to scum, crack addicts, prostitutes."[22]

- A 2014 review of an Extended Stay of America property in Washington noted the hotel was "drug dealer and prostitute infested."[23]

- In 2014, a man was arrested on trafficking charges for forcing an 18 year old girl to perform commercial sex at a Massachusetts Extended Stay America.[24]

- In 2015, a man was arrested as part of a prostitution sting at an Extended Stay America property in Ohio.[25]

- In 2016, six people were arrested following a prostitution sting at an Extended Stay America property in Ohio.[26]

- A 2016 review of an Extended Stay America property in North Carolina noted "Was offered companionship in parking lot. Doors banging all

---

[19] https://www.justice.gov/usao-wdtn/pr/osbie-antonio-sea-indicted-sex-trafficking-14-year-old-girl-and-two-others
[20] https://www.stltoday.com/news/local/stcharles/two-accused-of-prostituting-teen-in-st-peters-hotel-room/article_67366bb0-bef4-11e1-8098-001a4bcf6878.html
[21] https://www.sun-sentinel.com/2013/08/20/human-trafficking-suspects-accused-of-prostituting-women-in-plantation-2/
[22] https://www.tripadvisor.com/ShowUserReviews-g30196-d217731-r216084275-Extended_Stay_America_Austin_North_Central-Austin_Texas.html
[23] https://www.tripadvisor.com/ShowUserReviews-g58537-d225969-r213496204-Extended_Stay_America_Seattle_Kent-Kent_Washington.html
[24] https://www.patriotledger.com/story/news/crime/2016/01/30/local-motels-hotels-are-hotbeds/32534523007/
[25] https://www.thelantern.com/2015/12/columbus-police-sting-operation-lead-to-adolphus-washington-solicitation-citation/#:~:text=Washington%20was%20charged%20and%20released,America%20hotel%20in%20Worthington%2C%20Ohio.
[26] https://www.pressreader.com/usa/dayton-daily-news/20160226/282063391043820

night. Drug dealers prevelant on property. Not kid friendl. I reported all this Management does not care."[27]

- A 2018 review for a Florida Extended Stay America property noted "Prostitutes are obvious around the hotel at night."[28]

45.    Upon information and belief, ESA monitored both news stories and online reviews which provided it with notice of widespread criminal activity, including sex trafficking, at its branded properties.

46.    Despite the mounting evidence that sex trafficking at their properties was ongoing and growing, ESA continued to earn revenue through conduct that it knew or should have known would continue to facilitate that trafficking.

**B. Defendants' knowledge of widespread and ongoing sex trafficking at their branded hotels.**

47.    This sampling of news stories, reviews, and other public information establishes that, at the time Jane Doe (S.J.C.) was trafficked at its hotel, ESA knew, at least, that:

a.    There was widespread and ongoing sex trafficking occurring at their branded properties.

b.    Sex trafficking was a brand-wide problem stemming from their top-level decisions.

c.    Their branded hotels were not taking reasonable steps to identify, report, and respond to known or probable sex trafficking occurring at their hotel properties and were facilitating sex trafficking at the branded hotel properties.

---

[27] https://www.tripadvisor.com.sg/ShowUserReviews-g49463-d100747-r352238410-Extended_Stay_America_Suites_Raleigh_Midtown-Raleigh_North_Carolina.html
[28] https://www.tripadvisor.co.nz/ShowUserReviews-g60805-d88463-r611312631-Extended_Stay_America_Jacksonville_Lenoir_Avenue_East-Jacksonville_Florida.html

d. Their efforts, if any, to stop facilitating sex trafficking in their branded properties were not effective.

e. They were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring.

48.    Despite the continually mounting evidence that sex trafficking at their properties was ongoing and growing, ESA earned revenue by continuing conduct that it knew or should have known would continue to facilitate that trafficking.

## IV.    Sex Trafficking at the Subject Extended Stay America

### A. ESA had actual and constructive knowledge of widespread and ongoing sex trafficking at the Subject Extended Stay America.

49.    ESA was specifically aware that sex trafficking was widespread and ongoing at the Subject Extended Stay America.

50.    Online reviews of ESA's hotels, which upon information and belief were monitored by ESA, establish the nature of the role that the subject Extended Stay America hotel served as a venue of sex trafficking. For example:

- A 2016 Expedia review for the subject Extended Stay America states: "Arrived to check in. Never stayed. It was a drug and prostitute hotel. So terrified couldn't run away fast enough."[29]

- A 2016 Google review for the subject Extended Stay America states: "NASTIEST place I have ever attempted to stay at. Other than the FILTH THAT WAS IN/ON THE BED some lady staying on top floor looked like a crackhead who was a hooker. We changed rooms the first time because of dried blood on the comforter."[30]

---

[29] https://www.expedia.com/Atlanta-And-Vicinity-Hotels-Extended-Stay-America-Suites-Atlanta-Perimeter-Hammond-Drive.h82250.Hotel-Reviews
[30] https://www.google.com/travel/hotels/Extended%20Stay%20America%201050%20Hammond%20Dr,%20Atlanta,

- A 2018 Expedia review for the subject Extended Stay America states: "On arrival our confirmed booking, a room for two adults with a queen bed and sleeper sofa, was only available at a higher price until proof of the written confirmation was shown. Towels and blankets were provided for only one adult. There was no running water. At 8 pm the front office was unresponsive. There were no clothes hangers, no iron, no hair dryer. There were condoms under the bed. In the morning the smoke alarm went off in a neighboring suite. The door had been left open to reveal that someone had turned on the stove and left a knife to melt in the frying pan. We turned off the stove and called the front office. Someone else had meanwhile smashed the glass on the vending machines. We checked out early without a refund of our prepaid reservation."[31]

- A 2019 Expedia review for the subject Extended Stay America states: "Horrifying. No drinking glasses in the room. Semi clean. Did not use shower or tub. Learned that the location was under investigation for sex trafficking. Would have left had I not been so tired. Left before daylight."[32]

- A 2020 Google review for the subject Extended Stay America states: "The first room I was given had no blankets on the bed, soiled carpet and a strong smell of mildew. The 2nd one I was given had a condom in the toilet that we had a hard time flushing because the button on top of the toilet was misaligned."[33]

---

%20GA%2030328/entity/CgoIlfSaobTZ9fIWEAE/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,428
4970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4810792,4810794,481405
0,4821091,4861688,4864715,4874190,4879519,4886082,4886480,4893075,4902277,4905351,4906023,4906050,49
20622,4926165,4926489,4930751,4930753,4936396,4940559,47061553&hl=en-
IN&gl=in&ssta=1&q=Extended+Stay+America+1050+Hammond+Dr,+Atlanta,+GA+30328&grf=EmQKLAgOEig
SJnIkKiIKBwjnDxABGBoSBwjnDxABGBsgADAeQMoCSgcI5w8QARgaCjQIDBIwEi6yASsSKQonCiUweDg4Z
jUwOTRjOTA3MzZhMzE6MHg1NmYzZDZjYjQ0MjZiYTE1&rp=EJX0mqG02fX5VhCV9JqhtNn1-
VY4AkAASAHAAQI&ictx=1&sa=X&ved=2ahUKEwjjstqwreT8AhWcHDQIHZ0EAjsQ4gl6BQiDARAF

[31] https://www.expedia.com/Atlanta-And-Vicinity-Hotels-Extended-Stay-America-Suites-Atlanta-Perimeter-Hammond-Drive.h82250.Hotel-Reviews

[32] https://www.expedia.com/Atlanta-And-Vicinity-Hotels-Extended-Stay-America-Suites-Atlanta-Perimeter-Hammond-Drive.h82250.Hotel-Reviews

[33]
https://www.google.com/travel/hotels/Extended%20Stay%20America%201050%20Hammond%20Dr,%20Atlanta,
%20GA%2030328/entity/CgoIlfSaobTZ9fIWEAE/reviews?g2lb=2502548,2503771,2503781,4258168,4270442,428
4970,4291517,4306835,4429192,4515404,4597339,4723331,4731329,4757164,4778035,4810792,4810794,481405
0,4821091,4861688,4864715,4874190,4879519,4886082,4886480,4893075,4902277,4905351,4906023,4906050,49
20622,4926165,4926489,4930751,4930753,4936396,4940559,47061553&hl=en-
IN&gl=in&ssta=1&q=Extended+Stay+America+1050+Hammond+Dr,+Atlanta,+GA+30328&grf=EmQKLAgOEig

- A 2022 Booking review for the subject Extended Stay America states: "Our room was half clean there was trash under the bed and a condom package under the bed."[34]

51.    Traffickers, including Jane Doe (S.J.C.)'s trafficker, repeatedly chose to use the Subject Extended Stay America for their sex trafficking activity because of policies and practices that created a favorable environment for trafficking and because hotel staff turned a blind eye to signs of trafficking. There were obvious and apparent signs of this widespread trafficking activity, consistent with the well-known "red flags" of sex trafficking in the hospitality industry, that ESA knew or should have known about.

52.    Upon information and belief, and based on hotel reviews and records of law-enforcement calls, there were multiple trafficking victims exploited at the Subject Extended Stay America prior to and after Jane Doe (S.J.C.)'s trafficking who exhibited "red flags" of trafficking that were observed by hotel staff and management, including paying with cash or prepaid cards, having high volumes of men who were not registered guests in and out of their room at unusual times, arriving with few possessions for extended stays, and other signs consistent with the "red flags" of trafficking identified above.

---

SJnIkKiIKBwjnDxABGBoSBwjnDxABGBsgADAeQMoCSgcI5w8QARgaCjQIDBIwEi6yASsSKQonCiUweDg4Z
jUwOTRjOTA3MzZhMzE6MHg1NmYzZDZjYjQ0MjZiYTE1&rp=EJX0mqG02fX5VhCV9JghtNn1-
VY4AkAASAHAAQI&ictx=1&sa=X&ved=2ahUKEwjjstqwreT8AhWcHDQIHZ0EAjsQ4gl6BQiDARAF
[34] https://www.booking.com/hotel/us/hotel-hammond-drive-atlanta.ms.html

53.    Trafficking has a significant effect on its victims, and, upon information and belief, there were obvious "red flags" of trafficking apparent from the appearance, demeanor, and restricted movements of these victims, as well as the nature of these victims' interactions with their traffickers and others, all of which provided ESA with notice that these victims were being subject to violence, coercion, control, and exploitation.

54.    All knowledge from the staff at the Subject Extended Stay America is imputed to ESA. Thus, ESA knew about this widespread and ongoing trafficking at the Subject Extended Stay America, including the trafficking of Jane Doe (S.J.C.), through the direct observations of hotel staff, including management-level staff.

55.    Upon information and belief, ESA knew or should have known about widespread and ongoing trafficking activity at the hotel property because of non-public information available because ESA:

      a.  conducted regular inspections of the hotel property;

      b.  employed "field agents" to work with hotels on trafficking issues;

      c.  publicly represented that it monitored and audited hotels to determine the status of anti-trafficking efforts;

      d.  required hotel staff to report suspected trafficking activity to ESA;

      e.  had access to surveillance systems;

      f.  collected and monitored data that showed patterns consistent with trafficking;

g.  participated in internal investigations;

h.  solicited and received customer feedback and complaints;

56.    Upon information and belief, ESA adopted a protocol that, on its face, required hotel staff to report suspected criminal activity, including suspected prostitution and sex trafficking, to ESA. Based on the existence of this protocol and the widespread and obvious trafficking at the Subject Extended Stay America, there were multiple instances of suspected sex trafficking that were or should have been reported to ESA.

57.    ESA had constructive knowledge of the widespread and ongoing trafficking at the Subject Extended Stay America because this trafficking resulted from ESA's failure to exercise ordinary care operating the hotel.

**B.  Defendants knew that Jane Doe (S.J.C.) was being trafficked at the subject Extended Stay America because of the apparent and obvious "red flags" of sex trafficking.**

58.    During the period that Jane Doe (S.J.C.) was trafficked at the subject Extended Stay America location named herein, there were obvious signs that her traffickers were engaged in sex trafficking:

- Jane Doe (S.J.C.)'s trafficker intentionally requested, and ESA provided, rooms that were easily accessible by the property's back stairwell in order for the trafficker, johns, and Jane Doe (S.J.C.) to avoid being seen on surveillance video;

- Jane Doe (S.J.C.)'s trafficker forced her to pretend to be flirtatious with the hotel staff in order to ensure their continued ability to stay at the subject Extended Stay America;

- The hotel rooms in which Jane Doe (S.J.C.) was trafficked were frequently paid for with cash or prepaid cards;

- Other girls were trafficked at the same hotel at the same time as Jane Doe (S.J.C.);

- Even though Jane Doe (S.J.C.) and her trafficker would stay for multiple days at a time, housekeeping was kept away by using the "Do Not Disturb" door hanger;

- Housekeeping staff was prevented from entering the room for regular cleaning, towel exchange and other standard room services;

- The trafficker was often present with Jane Doe (S.J.C.) at check in and would linger around the hotel or in the parking lot while she was with a john;

- There was heavy foot traffic in and out of Jane Doe (S.J.C.)'s room involving men who were not hotel guests;

- Jane Doe (S.J.C.) had multiple johns every day. These individuals entered and left at unusual hours and were present at the hotel for brief periods of time; and

- Other obvious signs of trafficking consistent with the modus operandi of her traffickers and which included well known "red flags" for trafficking in a hotel.

59.     Based upon information and belief, multiple employees at the Subject Extended Stay America, including management-level employees, observed, or were made aware of these obvious signs of Jane Doe's trafficking while acting within the scope and course of their employment.

60.     As such, ESA knew or was willfully blind to the fact that Jane Doe (S.J.C.) was being trafficked at the subject Extended Stay America property.

61.     Given these obvious signs, ESA knew or should have known about the trafficking of Jane Doe (S.J.C.) based on its policy or protocol that required hotel staff to report suspected criminal activity including sex trafficking.

**C. ESA facilitated the trafficking activity at the Subject Extended Stay America, including the trafficking of Jane Doe (S.J.C.).**

62.     ESA had both actual and constructive knowledge of the trafficking of Jane Doe (S.J.C.) at the subject Extended Stay America location because the trafficking was the direct result of ESA facilitating her trafficking at the subject Extended Stay America location.

63.     ESA is responsible for the acts, omissions, and knowledge of all employees of the Subject Extended Stay of America when operating the hotel because these acts and omissions were committed in the scope and course of employment, because ESA ratified these acts and omissions, and because ESA failed to exercise reasonable care with regard to the hiring, training, and supervision of these employees given the specific risks, known to ESA, of human trafficking occurring at the Subject Extended Stay America.

64.     Despite having actual or constructive knowledge of widespread and ongoing sex trafficking at the Subject Extended Stay America, ESA continued renting rooms to these traffickers, including the rooms used to sexually exploit victims.

65.     ESA knew or was willfully blind to the fact that Jane Doe (S.J.C.) was being trafficked and, despite this, benefited from continued association with her trafficker by providing him a venue in the form of hotel rooms and related services, to facilitate Jane Doe (S.J.C.)'s sexual exploitation.

66.     ESA also facilitated widespread trafficking at the Subject Extended Stay America, including the trafficking of Jane Doe (S.J.C.), in ways including:

a.  adopting, maintaining, and enforcing policies and practices regarding guest identification in a way that facilitated trafficking by allowing traffickers, including Jane Doe's traffickers, to secure rooms without providing their own identifying information;

b.  adopting, maintaining, and enforcing policies and practices regarding payment methods in a way that facilitated trafficking by allowing traffickers, including Jane Doe's traffickers, to pay for rooms using non-traceable methods;

c.  adopting and enforcing training methods for hotel staff in a way that led to widespread and ongoing trafficking at the hotel property;

d.  adopting and enforcing policies and protocol regarding trafficking in a way that led to widespread and ongoing trafficking at the hotel property;

e.  providing traffickers continued access to Franchisor-maintained internet systems despite having active or constructive knowledge this access was being used for advertising services related to their trafficking activities;

f.  adopting inappropriate and inadequate practices for monitoring, supervising, and responding to issues regarding the conduct of hotel staff related to human trafficking;

g.  continuing the same methods of operation at the hotel property despite obvious evidence that those methods were leading to widespread and ongoing sex trafficking;

h.  continuing to provide wi-fi services to traffickers even though it knew or should have known those services were being used for advertising victims for sexual exploitation.

i.  implicitly encouraging the activities of traffickers by creating an environment where they did not need to incur the burden of taking significant steps to conceal their activities but, instead, could operate without concern for detection or interference by the hotel staff.

**D. ESA's ventures at the Subject Extended Stay America.**

67.  Through the conduct described above, ESA knowingly benefited from engaging in a venture with sex traffickers at the Subject Extended Stay America, including Jane Doe (S.J.C.)'s trafficker, as follows:

a.  ESA received benefits, including increased revenue, every time a room was rented at the Subject Extended Stay America.

b.  This venture engaged in violations of violated 18 U.S.C. §1591 through the actions of the criminal traffickers at the Subject Extended Stay America, which ESA knew or should have known about.

c.  ESA associated with traffickers, including Jane Doe (S.J.C.)'s trafficker, by acting jointly to continue to rent rooms to these traffickers despite having actual or constructive knowledge of their sex trafficking activity.

d.  ESA had a mutually beneficial relationship with the traffickers, fueled by sexual exploitation of victims.

e.  Sex traffickers, including Jane Doe (S.J.C.)'s trafficker, frequently used the Subject Extended Stay America for their trafficking because of an implicit understanding that this hotel was a venue that would facilitate their trafficking, providing

minimal interference and lowering their risk of detection. This understanding occurred because of the conduct of ESA facilitating that trafficking as described throughout this complaint. This resulted in benefits, including increased revenue, for ESA.

f.  ESA participated in this venture through the conduct described throughout this Complaint.

g.  Jane Doe (S.J.C.)'s trafficking at the Subject Extended Stay America was a result of ESA's participation in a venture with criminal traffickers. If ESA had not continued participating in a venture that it knew or should have known violated 18 U.S.C. §1591(a), it would not have received a benefit from Jane Doe (S.J.C.)'s trafficking at the Subject Extended Stay America.

## V.    Defendants are Jointly and Severally Liable for Jane Doe (S.J.C.)'s Damages

68.    The venture or ventures in which each Defendant participated were direct, producing, and proximate causes of the injuries and damages to Jane Doe (S.J.C.).

69.    Under the TVPRA, Defendants are jointly and severally liable for all damages that a jury awards to Jane Doe (S.J.C.) for past and future losses she suffered as a proximate result of her sexual exploitation and trafficking.

## <u>CAUSES OF ACTION – SEX TRAFFICKING UNDER THE TVPRA</u>

## I.   Count 1: Perpetrator liability under 18 U.S.C §1595(a) based on violation of 18 U.S.C §1591(a).

70.   Jane Doe (S.J.C.) is a victim of sex trafficking within the meaning of 18 U.S.C § 1591 and § 1591(a) and is thus entitled to bring a civil action under 18 U.S.C §1595(a) against the "perpetrator" of any violation of the TVPRA.

71.   ESA is a perpetrator within the meaning of 18 U.S.C § 1595(a) because it:

  a.   violated 18 U.S.C §1591(a)(1) when, through the acts and omissions described throughout this Complaint, it harbored individuals (including Jane Doe (S.J.C.)) knowing or in reckless disregard of the fact that the victims would be caused, while a minor and/or through force, coercion, or fraud, to engage in commercial sex acts while at its respective hotel property; and

  b.   violated 18 U.S.C §1591(a)(2) when, through the acts and omissions described throughout this Complaint, it knowingly received financial benefit by knowingly assisting, supporting, or facilitating a venture that was engaged in violations under 18 U.S.C §1591(a)(1) at its respective hotel property.

72.   Violations of 18 U.S.C. § 1595(a) by each of the Defendants as "perpetrators" operated, jointly with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (S.J.C.) to suffer substantial physical and psychological injuries and other damages because of her trafficking and sexual exploitation at the Defendants' hotel property.

## II.   Count 2: Beneficiary Liability under §1595(a) of the TVPRA.

73.   Jane Doe (S.J.C.) is a victim of sex trafficking within the meaning of 18 U.S.C §§ 1591 and 1595(a) and is thus entitled to bring a civil action under the

"beneficiary" theory in 18 U.S.C § 1595(a) against anyone who knowingly benefited from participation in a venture that the person knew or should have, with reasonable diligence, known was engaged in a violation of the TVPRA.

74.    Through acts and omissions described throughout this Complaint, each of the Defendants received a financial benefit from participating in a venture with traffickers, including Jane Doe (S.J.C.)'s trafficker, despite the fact that each defendant knew or should have known that these traffickers, including Jane Doe (S.J.C.)'s trafficker, were engaged in violations of 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 1591(a)(2). Thus, each Defendant is liable as a beneficiary under 18 U.S.C. § 1595(a).

75.    Violations of 18 U.S.C §1595(a) by each of the Defendants as "beneficiaries" operated, jointly, with other unlawful acts and omissions alleged in this Complaint, to cause Jane Doe (S.J.C.) to suffer substantial physical and psychological injuries and other damages because of being trafficked and sexually exploited at the Defendants' hotel property.

## DAMAGES

76.    Defendants' acts and omissions, individually and collectively, caused Jane Doe (S.J.C.) to sustain legal damages.

77.    Defendants are joint and severally liable for all past and future damages sustained by Jane Doe (S.J.C.).

78.    Jane Doe (S.J.C.) is entitled to be compensated for personal injuries and economic damages, including:

   a.  Actual damages (until trial and in the future)

   b.  Incidental and consequential damages (until trial and in the future);

   c.  Mental anguish and emotional distress damages (until trial and in the future);

   d.  Lost earnings and lost earning capacity (until trial and in the future);

   e.  Necessary medical expenses (until trial and in the future);

   f.  Life care expenses (until trial and in the future);

   g.  Physical pain and suffering (until trial and in the future);

   h.  Physical impairment (until trial and in the future);

   i.  Exemplary/Punitive damages;

   j.  Attorneys' fees; and

   k.  Costs of this action.

   l.  Pre-judgment and all other interest recoverable.

## **JURY DEMAND**

79.    Jane Doe (S.J.C.) demands a trial by jury on all issues.

## **REQUEST FOR RELIEF**

WHEREFORE, Jane Doe (S.J.C.) requests that this case be set for trial before a jury and that, upon a final hearing of the cause, judgment be entered for Jane Doe

(S.J.C.) against all Defendants jointly and severally for such actual, compensatory, and punitive damages as the evidence may show, and the jury may determine to be proper, together with the costs of suit, prejudgment interest, post-judgment interest, and such other and further relief to which Jane Doe (S.J.C.) may be justly entitled.

Respectfully submitted,

**DUBOSE MILLER**
75 14th Street NE, Suite 2110
Atlanta, Georgia 30309
404.720.8111

By: */s/ Tanya F. Miller*
        TANYA F. MILLER
        Georgia Bar No. 508434
        miller@dubosemiller.com

**ANNIE MCADAMS PC**

/s/ Annie McAdams
Annie McAdams | SBN 24051014
(*pro hac vice* forthcoming)
2900 North Loop West
Suite 1130
Houston Texas 77092
(713) 785-6262
(866) 713-6141 Facsimile
*annie@mcadamspc.com*

**PROVOST ✮ UMPHREY LAW FIRM**

BRYAN O. BLEVINS, JR. (SB 02487300)
(*pro hac vice* forthcoming)

31

350 Pine Street, Ste., 1100
Beaumont, TX 77701
Phone: (409) 835-6000
bblevins@pulf.com

and

**SICO HOELSCHER HARRIS, LLP**

/s/ David Harris
David E. Harris | SBN 24049273
(*pro hac vice* forthcoming)
Preston Burns | SBN 24086052
(*pro hac vice* forthcoming)
819 N. Upper Broadway
Corpus Christi, Texas 78401
(361) 653-3300
(361) 653-3333 Facsimile
*dharris@shhlaw.com*
*pburns@shhlaw.com*

**ATTORNEYS FOR PLAINTIFF**