UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| JANE DOE (S.J.C.), an individual,<br><br>Plaintiff,<br><br>v.<br><br>ESA P PORTFOLIO LLC, et al.,<br><br>Defendants. | CIVIL ACTION NO.<br>1:24-CV-02423-JPB |

## **ORDER**

This matter is before the Court on Defendants'[1] Motion to Dismiss [Doc. 24]. This Court finds as follows:

### **BACKGROUND**

Jane Doe ("Plaintiff") alleges that in September and October 2015, she was sex trafficked an "incalculable number of times" at the Extended Stay America hotel located at 1050 Hammond Drive in Atlanta, Georgia. [Doc. 1, p. 8]. According to Plaintiff, Defendants, who include both the franchisors and operators of the Extended Stay America hotel, knew or should have known that she was being trafficked. First, Plaintiff asserts that Defendants knew or should have

---

[1] Defendants are ESA P Portfolio LLC, ESA P Portfolio Operating Lessee Inc., ESA P Portfolio MD Trust, ESH Strategies Branding LLC, ESH Hospitality Holdings LLC, ESH Hospitality LLC, Extended Stay Hotels LLC, HVM LLC, HVM Member 1 Corp., HVM Manager 2 LLC and HVM Member 2 Corp.

known about the trafficking because it is widely known that a pervasive relationship exists between sex trafficking and the hotel industry such that the signs of sex trafficking in a hotel environment follow well-established patterns and can be easily detected by hotel staff. Id. at 9–11. Second, Plaintiff alleges that Defendants knew or should have known about her trafficking because Defendants knew that trafficking had occurred at other Extended Stay America branded properties in other states. Id. at 14–16. These states include Ohio, Louisiana, California, Tennessee, Missouri, Florida, Texas, Washington and Massachusetts. Id. at 15–16.

In addition to the general knowledge about the relationship between sex trafficking and hotels and trafficking at other branded properties, Plaintiff asserts that Defendant had actual and constructive knowledge of the sex trafficking at the hotel at issue because of online reviews about the hotel and various "red flags."[2] Id. at 18–20. Moreover, Plaintiff asserts that there were obvious signs that she was trafficked, including the following: (1) that her trafficker intentionally requested, and was provided, rooms that were easily accessible by the property's back

---

[2] As to the online reviews, Plaintiff cites to six reviews that were posted after the time when Plaintiff was trafficked. [Doc. 1, pp. 19–20]. These reviews indicated that there was drug and prostitution activity at the hotel and that the hotel was dirty. Id. The red flags included individuals paying with cash or prepaid cards, having high volumes of men who were not registered guests in and out of the rooms at unusual times and women arriving with few possessions for extended stays. Id. at 18–20.

2

stairwell to avoid detection; (2) that her trafficker forced her to be flirtatious with the hotel staff in order to ensure her continued stay at the hotel; (3) that her trafficker paid for the hotel rooms with cash or prepaid cards; (4) that housekeeping was kept away by using the "Do Not Disturb" door hanger and was prevented from performing regular cleaning, towel exchange and other standard room services; (5) that Plaintiff's trafficker was with her at check-in and would linger around the hotel or in the parking lot when she was with a "John"; and (6) that heavy foot traffic involving men in and out of Plaintiff's room occurred. Id. at 22–23.  Ultimately, Plaintiff asserts that despite this alleged knowledge that she was being trafficked, Defendants continued to rent rooms to her trafficker. Id. at 24.

On June 3, 2024, Plaintiff filed suit against Defendants alleging violations of the Trafficking Victims Protection Reauthorization Act ("TVPRA").  Defendants filed the instant Motion to Dismiss on July 17, 2024.  [Doc. 24].  The motion is now ripe for review.

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." Traylor v. P'ship

3

Title Co., 491 F. App'x 988, 989 (11th Cir. 2012).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A complaint is insufficient if it only tenders naked assertions devoid of further factual enhancement.  Id.  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (citation omitted).  At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation," id., and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Traylor, 491 F. App'x at 990 (quoting Iqbal, 556 U.S. at 678).  While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, Powell v. Thomas, 643 F.3d 1300, 1302 (11th Cir. 2011), a court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, Iqbal, 556 U.S. at 678.

     Accordingly, evaluation of a motion to dismiss requires two steps:  (1) a court must eliminate any allegations in the pleading that are merely legal

conclusions, and (2) where there are remaining well-pleaded factual allegations, a court must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

## DISCUSSION

The TVPRA offers a civil remedy to victims of certain types of sex trafficking. Indeed, the TVPRA creates liability for both those who perpetrate trafficking themselves ("perpetrator liability") and those who "knowingly benefit[], financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of" the TVPRA ("beneficiary liability"). 18 U.S.C. § 1595(a). In this case, Plaintiff asserts both a perpetrator liability claim and a beneficiary liability claim.

As stated above, the TVPRA allows a victim of sex trafficking to bring a civil claim against the perpetrator of the trafficking. See id. To state a claim for perpetrator liability, a plaintiff must allege that the defendant: (1) recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized or solicited by any means a person; (2) knowing that force, threats of force, coercion or any combination of such means would be used; (3) to cause the victim to engage in a commercial sex act. Treminio v. Crowley Maritime Corp., 707 F. Supp. 3d 1234, 1244 (M.D. Fla. 2023); see also Doe #1 v. Crowley

Maritime Corp., No. 3:23-CV-383, 2024 WL 1346947, at *8 (M.D. Fla. Mar. 29, 2024).

In addition to perpetrator claims, the TVPRA also allows victims of sex trafficking to bring civil claims against those who benefit from the trafficking. The Eleventh Circuit Court of Appeals has held that to state a claim for beneficiary liability under the TVPRA, a plaintiff must plausibly allege that the defendant:

> (1) knowingly benefited, (2) from taking part in a common undertaking or enterprise involving risk and potential profit, (3) that undertaking or enterprise violated the TVPRA as to the plaintiff, and (4) the defendant had constructive or actual knowledge that the undertaking or enterprise violated the TVPRA as to the plaintiff.

Doe #1 v. Red Roof Inns, 21 F.4th 714, 726 (11th Cir. 2021).

Defendants contend that Plaintiff's Complaint should be dismissed in its entirety. As a threshold matter, Defendants argue that both claims must be dismissed because Plaintiff failed to sufficiently allege that she was a victim of sex trafficking under the TVPRA. Defendants further argue that dismissal is required because Plaintiff failed to sufficiently allege that Defendants participated in a sex trafficking enterprise and that Defendants had actual or constructive knowledge of Plaintiff's trafficking.

1. **Failure to Allege Victim of Trafficking**

The TVPRA provides a civil cause of action to "[a]n individual who is a victim of a violation of" the TVPRA. 18 U.S.C. § 1595(a). The TVPRA defines victim as an "individual harmed as a result of a crime under this chapter." 18 U.S.C. § 1593(c). Particularly relevant here, for a sex trafficking offense to be committed against an adult,[3] the offense must be "effected by means of force, threats of force, fraud, or coercion." 18 U.S.C. § 1591(b)(1). Defendants assert that both the perpetrator and beneficiary claims should be dismissed because Plaintiff failed to sufficiently allege that she was a victim of sex trafficking under the TVPRA. Specifically, Defendants contend that Plaintiff neglected to provide any factual support which would show that her trafficking was due to force, threats of force, fraud or coercion.

The Court will begin by noting that Plaintiff's entire Complaint is replete with conclusory allegations.[4] As to the allegations that Plaintiff was a victim of sex trafficking specifically, Plaintiff's allegations are sparse. Plaintiff alleges that she "is a victim of sex trafficking . . . because she was harbored, transported, or provided for the purpose of causing her, through force, fraud, or coercion, to

---

[3] In this case, the Court assumes that Plaintiff is an adult.

[4] In the sections of Plaintiff's Complaint where she asserts her causes of action, she merely states the elements of the offenses without providing any factual support.

commit a commercial sex act." [Doc. 1, p. 4]. This is simply the statutory language that defines sex trafficking. As such, this is an impermissible conclusory allegation that need not be considered. Plaintiff alleges elsewhere in her Complaint that she was "trafficked through force and coercion by her trafficker to engage in numerous commercial sex acts." Id. at 8. Significantly, missing from Plaintiff's Complaint are non-conclusory allegations or facts that show how she was forced or how she was coerced to engage in commercial sex acts. For example, Plaintiff does not allege that she was drugged or physically assaulted or threatened in any way. She also does not allege that she was restrained against her will. Because Plaintiff's Complaint does not contain any non-conclusory allegations which would show that she was a victim of trafficking through force, fraud or coercion, dismissal is warranted. Accordingly, to the extent that Defendants argue that dismissal is required because Plaintiff failed to sufficiently allege that she was a victim of sex trafficking, the motion is **GRANTED**.[5] See Doe (L.M.) v. 42 Hotel Raleigh, LLC, 717 F. Supp. 3d 464, 469 (E.D.N.C. 2024) (determining that an allegation that the plaintiff was "forced to have repeated visits from sex buyers" was conclusory because it provided "no facts from which any

---

[5] Because the Court finds that Plaintiff's allegations were insufficient to show that she was a "victim" under the TVPRA, the Court need not address Defendants' other arguments. Dismissal is warranted on this basis alone. The Court, however, will analyze Defendants' other arguments in an abundance of caution.

inference of force, threats, fraud, or coercion could be drawn, besides its conclusory invocation of force"); cf. Doe v. Hotels, No. 6:23-CV-1012, 2024 WL 2955728, at *2 (M.D. Fla. June 12, 2024) (holding that a plaintiff's allegations that she was a victim of trafficking were sufficient where the plaintiff alleged that she was forced into human trafficking because she was under the constant threat of terror, physically abused, restrained from going anywhere without her trafficker and drugged).

## 2. Participation in a Trafficking Venture

In their Motion to Dismiss, Defendants challenge the second element of Plaintiff's beneficiary claim, which requires a plaintiff to allege that a defendant participated in a venture. As to this element, the Eleventh Circuit has stated that the definition of "participation in a venture" is not the same as that found in the criminal provisions of § 1591(e)(4).[6] Red Roof Inns, 21 F.4th at 724. Instead, in the civil context, "participation in a venture" merely requires that a plaintiff allege that the defendant took part in a common undertaking or enterprise involving risk and potential profit. Id. at 725.

---

[6] Under the criminal provisions, "participation in a venture" is defined as "knowingly assisting, supporting, or facilitating a violation of subsection(a)(1)," which criminalizes commercial sex acts of minors and commercial sex acts obtained through threats or force. Red Roof Inns, 21 F.4th at 724.

Courts within the Eleventh Circuit have struggled with what types of allegations are sufficient to show participation in a venture. While the Eleventh Circuit has not set forth the specific pleading standards of this element, the court has held that allegations consisting only of renting hotel rooms combined with observing signs of sex trafficking are not enough. K.H. v. Riti, Inc., No 23-11682, 2024 WL 505063, at *3 (11th Cir. 2024) (per curiam). Indeed, the Eleventh Circuit has emphasized that "observing something is not the same as participating in it." Red Roof Inns, 21 F.4th at 727. Notably, the Eleventh Circuit has signaled that allegations similar to those in Ricchio v. McLean, 853 F.3d 553 (1st Cir. 2017), would be sufficient to show participation in a venture. The court in Ricchio summarized the plaintiff's allegations concerning the venture between the trafficker (McLean) and the hotel operators (the Patels), as follows:

> McLean enticed Ricchio to drive from Maine to the [motel] in Massachusetts, where he took her captive and held her against her will. Over the course of several days there, McLean physically and sexually abused Ricchio, repeatedly raping her, starving and drugging her, and leaving her visibly haggard and bruised. He told her that he was grooming her for service as a prostitute subject to his control. McLean had prior commercial dealings with the Patels, which the parties wished to reinstate for profit. McLean and Mr. Patel enthusiastically expressed this intent by exchanging high-fives in the motel's parking lot while speaking about "getting this thing going again," in circumstances in which McLean's coercive and abusive treatment of Ricchio as a sex slave had become apparent to the Patels. Ms. Patel had not only nonchalantly ignored Ricchio's plea for help in escaping from McLean's custody at the

> motel but, when visiting the rented quarters to demand further payment, had shown indifference to Ricchio's obvious physical deterioration. And in plain daylight view of the front office of the motel, either of the Patels on duty there would have seen McLean grab Ricchio, kick her, and force her back toward the rented quarters when she had tried to escape.

Ricchio, 853 F.3d at 555.

In this case, Plaintiff alleges that Defendants participated in a venture with her trafficker because Defendants knew or should have known that sex trafficking was occurring at the hotel based on industry knowledge, incidents at other branded hotels, online reviews and certain red flags, yet continued to rent a room to her trafficker. Plaintiff's Complaint, however, does not contain any allegations that hotel employees assisted in the trafficking by acting as police lookouts or that Plaintiff exhibited any visible signs of distress. Moreover, the Complaint lacks allegations that the trafficker and the hotel employees had any sort of close relationship, that hotel employees witnessed abuse or that hotel employees ignored Plaintiff's pleas for help.

As stated previously, the Eleventh Circuit has held that allegations that amount to contentions that a defendant "financially benefited from renting hotel rooms" and that a defendant "observed signs of sex trafficking at the hotel" are not sufficient to establish that the defendant participated in a sex trafficking venture because "observing signs of sex trafficking 'is not the same as participating in it.'"

11

Riti, 2024 WL 505063, at *4 (quoting Red Roof Inns, 21 F.4th at 726).  Because a plaintiff must do more than show that a defendant rented a room to a trafficker and observed signs of sex trafficking, dismissal is required in this case.  Accordingly, to the extent that Defendants argue that Plaintiff failed to plausibly allege that Defendants participated in a common sex trafficking undertaking or enterprise with her trafficker, the motion is **GRANTED**.

### 3. Knowledge

"Both perpetrator and [beneficiary] liability contain a mens rea element." Treminio, 707 F. Supp. 3d at 1245.  For perpetrator liability claims, a plaintiff must show that the defendant knew or was in reckless disregard of the fact that force, threats, fraud or coercion was employed against a victim to cause her to engage in commercial sex.  Id.  Beneficiary claims have a slightly lower mens rea requirement.  Indeed, for beneficiary claims, a plaintiff must demonstrate that a defendant had actual or constructive knowledge that the defendant's venture with the trafficker violated the TVPRA as to the plaintiff.[7]  Red Roof Inns, 21 F.4th at 725.  In their Motion to Dismiss, Defendants contend that both the perpetrator and beneficiary claims are subject to dismissal because Plaintiff failed to sufficiently

---

[7] The TVPRA defines sex trafficking as "commercial sex activity either involving a minor or where 'force, threats of force, fraud, coercion . . . or any combination of such means [is] used to cause [a] person to engage in a commercial sex act.'"  18 U.S.C. § 1595(a).

12

allege that Defendant had either actual or constructive knowledge that force, fraud or coercion caused Plaintiff to engage in a commercial sex act.

As already stated previously in this order, many of Plaintiff's allegations are conclusory in nature, and her allegations concerning Defendants' knowledge are no different. In this case, Plaintiff alleges that her trafficker intentionally requested rooms in the back of the hotel, which were paid for in cash. She further alleges that her trafficker forced her to flirt with hotel staff and that she prevented housekeeping staff from entering her room. Moreover, Plaintiff contends that her trafficker was often present with her at check in and would linger in the parking lot while she was with a "John." Finally, Plaintiff asserts that there was heavy foot traffic in and out of her room.

These allegations are not sufficient to show that Defendant knew or should have known that Plaintiff's trafficker caused her to engage in a commercial sex act through force, fraud or coercion. Indeed, there are no allegations that hotel staff observed her trafficker forcefully bringing her to the hotel or abusing her in any way. Plaintiff does not even claim that she ever had visible injuries or that she ever acted nervous or afraid around hotel employees. Under these facts, the Court cannot say that Defendant knew or should have known that Plaintiff was being trafficked through force, fraud or coercion. In short, Plaintiff's allegations are

insufficient to show constructive knowledge, much less reckless disregard or actual knowledge.  At most, it seems that Defendant knew or should have known that prostitution—not trafficking—was causing the extreme foot traffic and refusal to admit housekeeping.  See A.B. v. Extended Stay Am. Inc., No. 3:22-CV-05939, 2023 WL 5951390, at *6 (W.D. Wash. Sept. 13, 2023) (collecting cases that have found that allegations consistent with general commercial sex activity, but not rising to the level of sex trafficking, do not give rise to a TVPRA claim and explaining that in cases that do state a claim, a plaintiff "typically alleges that they exhibited some external indicator of physical distress that would have been obvious to hotel staff"); see also 42 Hotel Raleigh, 717 F. Supp. 3d at 472 (stating that "knowledge of prostitution is not necessarily knowledge of sex trafficking by force or fraud as defined in 18 U.S.C. § 1591" and recognizing that the plaintiff failed to allege any signs of physical abuse or other allegations which would indicate that force or fraud was used).  Accordingly, Plaintiff has failed to establish the knowledge requirement sufficient to support either of her claims.  To the extent that Defendant seeks dismissal for failure to plead the requisite knowledge, Defendants' motion is **GRANTED**.

**4. Opportunity to Amend**

At the end of her opposition brief, Plaintiff asks the Court for permission to amend her Complaint in the event that Defendants' motion is granted. Federal Rule of Civil Procedure 15 provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days of serving it." Fed. R. Civ. P. 15(a)(1)(A). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," but "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Eleventh Circuit has explained that "[f]iling a motion is the proper method to request leave to amend," and that a motion for leave to amend "should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment." Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999).

Plaintiff did not seek to amend her pleading within twenty-one days of serving it. Moreover, Plaintiff failed to file a separate motion requesting leave to amend. Even more problematically, Plaintiff has not set forth either the substance of the proposed amendment or attached a copy of it. Instead, all Plaintiff did here was ask for permission to amend at the conclusion of her brief in opposition to the pending Motion to Dismiss. The Eleventh Circuit "has clearly held that '[w]here a request for leave to file an amended complaint simply is imbedded within an

opposition memorandum, the issue has not been raised properly.'" Cita Tr. Co. AG v. Fifth Third Bank, 879 F.3d 1151, 1157 (11th Cir. 2018) (quoting Rosenberg v. Gould, 554 F.3d 962, 967 (11th Cir. 2009)). Because Plaintiff failed to properly move for leave to amend, Plaintiff's alternative request for permission to amend is **DENIED**.

### CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's Complaint [Doc. 24] is **GRANTED**. The Clerk is **DIRECTED** to close this case.

**SO ORDERED** this 15th day of November, 2024.

J. P. BOULEE
United States District Judge